**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**LAZARO R. RODRIGUEZ HERNANDEZ,**

**Petitioner,**

**v.** **Case No. 2:26cv689**

**NEY HIDALGO, *et al.*,**

**Respondents.**

# REPORT AND RECOMMENDATION

Pending before the Court is a Petition for a Writ of Habeas Corpus submitted pursuant to 28 U.S.C. § 2241 ("the Amended Petition"), ECF No. 1, Petitioner's Motion to Appoint Counsel, ECF No. 2, and Petitioner's Motion for Non-Transfer Order, ECF No. 3. Respondents oppose granting the Petition. ECF No. 8. This case was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(A)–(B) and Rule 72(b) of the Federal Rules of Civil Procedure. For the foregoing reasons, the undersigned **RECOMMENDS** that the Petition, ECF No. 1, be **GRANTED**, and that Petitioner be immediately released from custody. The undersigned further **RECOMMENDS** that the Motion to Appoint Counsel and Motion for Non-Transfer Order, ECF Nos. 2–3, be **DISMISSED AS MOOT**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Lazaro Roberto Rodriguez Hernandez ("Petitioner") is a native and citizen of Cuba who is currently detained pursuant to 8 U.S.C. § 1231 at Caroline Detention Center.[1] ECF No. 8, attach. 2 at ¶¶ 3, 5. On or about November 7, 1995, Petitioner entered the United States at

---

[1] The factual assertions recited here are taken from the Declaration of Justin Richardson, Acting Assistant Field Office Director with Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO"). ECF No. 8, attach. 2.

Miami, Florida, and was issued a Form I-94 and paroled into the United States for two years. *Id.* ¶ 6.

On May 28, 2002, Petitioner was convicted of Unlawful Possession of a Controlled Substance with Intent to Sell, in violation of Tennessee Code Annotated § 39-17-417, and sentenced to six years' incarceration. *Id.* ¶ 7. On June 17, 2002, the Immigration and Naturalization Service ("INS") arrested Petitioner pursuant to a Form I-200, Warrant of Arrest, and served him with a Notice to Appear ("NTA"), charging him as removable under 8 U.S.C. § 1182(a)(2)(C), as an alien "who the consular officer or the Attorney General knows or has reason to believe is or has been an illicit trafficker in any controlled substance or in any listed chemical (as defined in section 802 of title 21), or is or has been a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking in any such controlled or listed substance or chemical, or has endeavored to do so." *Id.* ¶ 8.

On January 15, 2003, Petitioner was taken into civil immigration custody. *Id.* ¶ 9. On February 27, 2003, an Immigration Judge ("IJ") ordered Petitioner removed from the United States to Cuba after Petitioner failed to file any applications for relief from removal. *Id.* ¶ 10; *see* ECF No. 8, attach. 3. Petitioner waived his right to appeal. ECF No. 8, attach. 2 at ¶ 10; *see* ECF No. 8, attach. 3. On August 26, 2003, Petitioner was released pursuant to an Order of Supervision ("OSUP") because Cuba would not issue travel authorization. ECF No. 8, attach. 2 at ¶ 11; *see* ECF No. 8, attach. 4.

On October 25, 2005, Petitioner was convicted of a Third-Degree Sexual Offense, in violation of Maryland Code § 3-307, and sentenced to five years in confinement, with four years suspended, and five years of supervised probation. ECF No. 8, attach. 2 at ¶ 12. ICE issued an immigration detainer. *Id.*

On January 31, 2006, Petitioner was taken into civil immigration custody again following his release from criminal custody, and his OSUP was revoked based on his new criminal conviction. *Id.* ¶ 13. On or about June 2, 2006, Petitioner was released from custody pursuant to an OSUP because there was no significant likelihood of his removal in the reasonably foreseeable future. *Id.* ¶ 14. Thereafter, Petitioner reported for check-ins with Enforcement and Removal Operations ("ERO") every six months. *Id.* ¶ 15.

On October 25, 2011, Petitioner received updated conditions of release on his OSUP, which Respondents clarify was not a new OSUP but rather the same OSUP from 2006 that ERO merely reissued with updated conditions. *Id.* ¶ 16; *see* ECF No. 8, attach. 5. Petitioner continued to report for check-ins with ERO every six months. ECF No. 8, attach. 2 at ¶ 17.

On June 15, 2026, ERO encountered Petitioner and served him with a Form I-205, Warrant of Removal, and a Form I-200, Warrant of Arrest. *Id.* ¶ 18; *see* ECF No. 8, attach. 6. ERO placed Petitioner in civil immigration custody, served him with a revocation of his OSUP, and gave him an opportunity to give an informal interview. ECF No. 8, attach. 2 at ¶ 18; *see* ECF No. 8, attachs. 8–9.

On June 23, 2026, Petitioner was served with a Notice of Third Country Removal to Mexico as part of ERO's efforts to effectuate his removal. ECF No. 8, attach. 2 at ¶ 19; *see* ECF No. 8, attach. 10. Petitioner did not claim a fear of removal to Mexico. ECF No. 8, attach. 2 at ¶ 19. On or about July 15, 2026, Cuba denied repatriation. *Id.* ¶ 20. Respondents represent that, once the Court's no-transfer order is lifted, Petitioner can be transported to the southern border of the United States and presented to Mexico for acceptance. *Id.* ¶ 21.

On July 8, 2026, Petitioner filed the Petition, alleging that his detention and the revocation of his OSUP violated his due process rights under the Fifth Amendment as well as the

Administrative Procedure Act ("APA") and the *Accardi* doctrine. *See* ECF No. 1 at 6–8. Petitioner requests, among other relief, a declaration that his detention is unlawful and his release from detention subject to his prior conditions of supervision. *See id.* at 8.

On August 7, 2026, Respondents filed their Opposition to the petition, along with the Department of Homeland Security's ("DHS") March 30, 2025, guidance establishing procedures for removing aliens with final removal orders to third countries ("March Guidance"); the Declaration of Justin Richardson, Acting Assistant Field Office Director with ICE, ERO; the February 27, 2003, order of removal; Petitioner's original and reissued OSUP; Petitioner's June 15, 2026, Warrant of Removal/Deportation; Petitioner's Form I-294, Warning to Alien Ordered Removed or Deported; Petitioner's Notice of Revocation of Release; Petitioner's Form 71-090, Alien Informal Interview Upon Revocation of Order of Supervision; and Petitioner's Notice of Removal. ECF No. 8; ECF No. 8, attachs. 1–10. Respondents assert that Petitioner's detention is not unlawful under 8 U.S.C. § 1231 and *Zadvydas v. Davis*, 533 U.S. 678 (2001), the revocation of Petitioner's OSUP did not violate his due process rights, and, to the extent Petitioner challenges his third-country removal to Mexico, Petitioner received the process he was due regarding his fear of removal to Mexico. ECF No. 8 at 9–18.

On August 20, 2026, Petitioner filed his reply, maintaining that his removal is not reasonably foreseeable and ICE violated both its own regulations and Petitioner's due process rights when it revoked his OSUP and re-detained him. ECF No. 10 at 2–13. On September 24, 2026, Petitioner filed a "Notice of Developments," notifying the Court of several "post briefing developments regarding his ongoing detention." ECF No. 15 at 1. Of note, Petitioner submits email correspondence showing that on September 11, 2026—twelve minutes after his counsel requested his release and sent supporting documentation ahead of Petitioner's scheduled custody

review—his request for release was denied, with the reason being that Petitioner's "no transfer order from the EDVA . . . is the reason for his continued detention," that "ICE was in the process of his removal pending a decision from the government of Cuba," that "ICE has the means to remove him in the reasonable [sic] foreseeable future," and that, as a result, "[r]elease will not be considered at this time." ECF No. 15, attach. 2 at 1.

Accordingly, this matter is ripe for recommended disposition.

## II. DISCUSSION

Pursuant to 28 U.S.C. § 2241, federal courts are authorized to issue a writ of habeas corpus to one who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The writ of habeas corpus has traditionally 'served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.'" *Luna Sanchez v. Bondi*, No. 1:25-CV-018888, 2025 WL 3191922, at *2 (E.D. Va. Nov. 14, 2025) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Habeas is "regularly invoked on behalf of noncitizens." *Id.* (quoting *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382, 2025 WL 2783800, at *3 (E.D. Va. Sept. 30, 2025)) (additional citations omitted).

Pursuant to the Due Process Clause of the Fifth Amendment, no *person* shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause extends to *all* persons, including "aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "As the Supreme Court has recognized, 'habeas corpus in the federal courts provides a mode for the redress of denials of due process of law. Vindication of due process is precisely its historic office.'" *Castaneda v. Perry*, 95 F.4th 750, 762 (4th Cir. 2024) (citing *Fay v. Noia*, 372 U.S. 391, 402 (1963), *overruled on other grounds by Wainwright v. Sykes*, 433 U.S. 72 (1977)).

**A. Petitioner's Continued Detention is Unlawful Under 8 U.S.C. § 1231.**

Petitioner alleges that Respondents violated Petitioner's substantive due process rights under *Zadvydas* by continuing to detain him despite there being no evidence showing a significant likelihood of his removal in the reasonably foreseeable future. ECF No. 10 at 2–9.

*1. Petitioner Has Not Been Detained Beyond the Presumptively Reasonable Period of Detention.*

After an order of removal becomes final, the Attorney General "shall detain the alien" during the ninety-day removal period established under 8 U.S.C. § 1231(a)(2). *Zadvydas*, 533 U.S. at 683. The Supreme Court in *Zadvydas* held that the INA contains an implicit limitation of this detention period past ninety days: detention is presumptively reasonable for up to six months. *Id.* After that six-month period has elapsed, if the alien demonstrates "that there is no significant likelihood of removal in the reasonably foreseeable future," then the Government must respond with evidence sufficient to rebut that showing. *Id.* The six-month presumption does not require automatic release once an alien's detention reaches six months; rather, an alien may remain detained until it is determined that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.*

Respondents correctly note that Petitioner remains within the presumptively reasonable six-month detention period recognized in *Zadvydas*. *See* ECF No. 12 at 9–10. Petitioner was detained on June 15, 2026, and the Petition was filed less than one month later on July 8, 2026. *See* ECF No. 1; ECF No. 8, attach. 2 at ¶ 18; ECF No. 8, attach. 6. Thus, Petitioner's current period of post-final-order detention has lasted approximately three months, well within the six-month period contemplated under *Zadvydas*.

Petitioner argues that he has been detained for more than twelve months based on his earlier detention in 2003 for approximately seven months, a subsequent period of detention in 2006 or

approximately four months, and his current detention for approximately three months. ECF No. 10 at 4. However, courts within this district have generally held that the six-month period is measured from the most recent detention or re-detention, rather than by aggregating prior periods of custody. *See, e.g.*, *Lee v. Crawford*, No. 2:25-CV-535, 2026 WL 745263, at *3 (E.D. Va. Feb. 27, 2026), *report and recommendation adopted*, No. 2:25-CV-535, 2026 WL 738591 (E.D. Va. Mar. 16, 2026) ("The weight of authority holds that when an alien is re-detained pursuant to a final order of removal, the six-month presumptively reasonable period runs from the date of the most recent detention, not from any prior period of custody."); *Shaikh v. Lyons*, No. 1:25-CV-811, Dkt. No. 12 at 6 (E.D. Va. June 23, 2025) ("Seeking to avoid this conclusion, Petitioner asserts that, for purposes of the *Zadvydas* analysis, his current period of detention should be combined with prior periods of detention; this is incorrect."). Accordingly, Petitioner's earlier periods of detention do not count toward the six-month period applicable to his current detention.

However, that presumption does not categorically bar judicial review before six months have elapsed. Rather, courts have recognized that a petitioner may rebut the presumption by demonstrating that removal is not reasonably foreseeable. *See Cruz Medina*, 794 F. Supp. 3d at 375 ("During the six-month period, '[t]he presumption of reasonableness is the default,' and the government 'bears no burden to justify detention.' . . . But if a petitioner 'claim[s] and *prove[s]* . . . that his removal is not reasonably foreseeable'—including during the six-month period—the petitioner 'can overcome that presumption' and detention is no longer authorized." (citation omitted)); *Serpas*, 2026 WL 1244544, at *4 ("As other courts in this Circuit have recognized, the Supreme Court in *Zadvydas* did not announce a categorical bar on challenging detention prior to six months, but rather a rebuttable presumption that 180 days of detention is reasonable"). The

Court therefore proceeds to consider whether Petitioner has shown that his removal is not reasonably foreseeable.

*2. There is No Significant Likelihood of Petitioner's Removal in the Reasonably Foreseeable Future.*

If Petitioner provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, Respondents must come forward with evidence sufficient to rebut that showing. *Zadvydas*, 533 U.S. at 701. Respondents contend that Petitioner has failed to make that initial showing because to the extent that Petitioner argues Respondents cannot obtain travel documents for his removal to Mexico, that assertion is speculative. ECF No. 8 at 10. Respondents assert that, absent this Court's order barring Petitioner's removal or transfer, "Petitioner can be transported to the southern border of the United States and presented to Mexico for acceptance." *Id.* at 11.

Petitioner disputes this, arguing that his removal is not reasonably foreseeable because Cuba has repeatedly refused to issue travel documents, resulting in his prior releases from ICE custody and, most recently, Cuba's denial of repatriation on or around July 15, 2026. ECF No. 10 at 6. Petitioner further argues that Respondents' suggestion that Mexico may accept him for third-country removal is speculative because there is no evidence that Mexico has agreed to receive him, issued travel documents, or "is even aware of [Petitioner's] existence." *Id.* at 7. Petitioner maintains that the mere possibility of future third-country removal, without evidence of concrete progress toward acceptance by another country, is insufficient to establish that removal is reasonably foreseeable. *Id.* at 7–8.

Here, Petitioner has met his initial burden of showing that there is no significant likelihood of his removal in the reasonably foreseeable future. Petitioner points to multiple failed attempts at his removal to Cuba in the past, with the latest attempt as recently as July 15, 2026, when Cuba

denied repatriation. *See id.* at 6. Petitioner further represents that he fears removal to Mexico and "is aware that Mexico does not accept people who are not willingly brought there," making the prospect of his third-country removal to Mexico unlikely. *Id.* Taken together, Petitioner has sufficiently carried his burden of showing that there is no significant likelihood of his removal in the reasonably foreseeable future.

Furthermore, Respondents fail to rebut Petitioner's showing because they cannot show that any country is presently willing to accept Petitioner for removal. Respondents assert that Petitioner can be transported to the southern border and presented to Mexico for acceptance once this Court authorizes his transfer, but they have identified no basis for concluding that Mexico will actually accept Petitioner. *See* ECF No. 8 at 11. Instead, Respondents appear to rely on their ability and intention to present Petitioner to Mexico to determine whether Mexico will accept him, which is, at most, a possibility of removal rather than a significant likelihood of removal in the reasonably foreseeable future. Further, Respondents acknowledge in a footnote that this Court has rejected similar arguments in prior cases, but that they nonetheless raise these arguments again here "in order to preserve them for appeal, if authorized." *Id.* at 11 n.5. Thus, without evidence that Mexico or another country has affirmatively agreed to accept Petitioner, Respondents' proposed course of action shows only a possibility that removal may occur at some unspecified point in the future, not a significant likelihood of removal in the reasonably foreseeable future as *Zadvydas* requires.

The subsequent developments raised by Petitioner on September 24, 2026, further support this conclusion. On September 11, 2026, ICE denied Petitioner's request for release on the grounds that it was "in the process of his removal pending a decision from the government of Cuba" and had "the means to remove him in the reasonable [sic] foreseeable future," without identifying any progress toward removal to Mexico or any other country. *See* ECF No. 15, attach. 2 at 1. This

explanation from ICE continues to rest on the prospect of removal to Cuba, notwithstanding Cuba's July 15, 2026, denial of repatriation, and provides no additional evidence that removal is reasonably foreseeable.

Accordingly, Petitioner has sufficiently demonstrated that his removal to Cuba or Mexico is not reasonably foreseeable, and Respondents have failed to rebut that showing.

**B. Respondent's Revocation of Petitioner's OSUP Was Unlawful.**

Petitioner alleges that Respondents failed to follow 8 C.F.R. § 241.13 when revoking his OSUP, thereby violating the *Accardi* doctrine[2], the APA, and the Due Process Clause of the Fifth Amendment. ECF No. 1 at 6–8; ECF No. 10 at 10. Petitioner contends that Respondents did not make the required individualized determination that, based on changed circumstances, his removal had become significantly likely in the reasonably foreseeable future because the only stated basis for revocation was that ICE was seeking a travel document for removal to Cuba, even though Cuba has repeatedly refused to issue such documents and ultimately denied repatriation shortly after his re-detention. ECF No. 10 at 11–12. Petitioner further argues that he was not afforded a meaningful informal interview contemplated by § 241.13 because service of his Notice of Revocation of Release, re-detention, and interview occurred simultaneously on June 15, 2026, leaving him no notice or meaningful opportunity to understand or respond to the reasons for revocation. *Id.* Finally, Petitioner argues that Respondents cannot retroactively justify the revocation by asserting that they now intend to pursue removal to Mexico, particularly because the Notice of Revocation

---

[2] The *Accardi* doctrine is an administrative law principle that requires an agency to follow its own procedures, rules, and regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (setting aside a deportation order where BIA failed to follow its procedures for deportation proceedings); *see Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008) ("[W]hen an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid."); *United States v. Morgan*, 193 F.3d 252, 266 (4th Cir. 1999) ("We have recognized that an agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination.").

of Release identified Cuba and Petitioner was never given an opportunity to address Mexico as a potential country of removal. *Id.* at 13.

Respondents argue that Petitioner's OSUP was properly revoked under § 241.13 because ICE determined that changed circumstances made his removal reasonably foreseeable and Petitioner was given both notice of his revocation and an informal interview to respond to the reasons for revocation. ECF No. 8 at 13–14. Respondents therefore contend that there was no violation of the Due Process Clause or of the *Accardi* doctrine in connection with Petitioner's OSUP revocation, and that Petitioner's claim brought under the APA fails because APA claims are not cognizable in the habeas context. *Id.* at 14 & n.7.

Section 241.13 governs the release and supervision of an alien subject to a final order of removal who has established "good reason to believe there is no significant likelihood of removal . . . in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). An OSUP issued under § 241.13 may only be revoked "if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). Section 241.13 also provides for certain revocation procedures that DHS must follow, including notifying the alien "of the reasons for revocation" and conducting "an initial informal interview promptly after [the alien's] return to [DHS] custody to afford the alien an opportunity to respond to the reasons for revocation[.]" *Id.* § 241.13(i)(3).

Here, Respondents did not properly revoke Petitioner's OSUP. DHS may revoke an OSUP issued under § 241.13 only "if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). The Notice of Revocation identifies as the changed circumstance that "ICE is seeking a travel document to effect [Petitioner's] expeditious removal to Cuba." ECF

No. 8, attach. 8 at 2. But Respondents have not identified a changed circumstance indicating that Petitioner's removal to Cuba had become significantly likely after his prior failed removal attempts to Cuba. *See* ECF No. 8, attach. 2 at ¶ 11 ("On August 26, 2003, Petitioner was released on an [OSUP], as Cuba would not issue travel authorization."); *id.* ¶ 14 ("On or about June 2, 2006, Petitioner was released from custody on an OSUP, as there was no significant likelihood of removal in the reasonably foreseeable future."). In fact, Cuba's subsequent denial of repatriation on July 15, 2026, confirms that the circumstances regarding Petitioner's removal to Cuba had not materially changed such that there was a "significant likelihood" of removal in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(i)(2); ECF No. 8, attach. 2 at ¶ 20 ("On or about July 15, 2026, Cuba denied repatriation.").

Furthermore, there is insufficient evidence demonstrating a significant likelihood of Petitioner's removal to Mexico in the reasonably foreseeable future beyond Respondents' assertion that ICE can transport Petitioner to the southern border and present him to Mexico for acceptance. *See* ECF No. 8, attach. 2 at ¶ 21. Respondents do not contend that Mexico has agreed to accept Petitioner, issued travel documents, or otherwise taken any affirmative steps toward effectuating his removal. Rather, Respondents merely assert that ICE is "prepared" to present Petitioner to Mexico to determine whether Mexico will accept him. *See* ECF No. 8 at 2. As this Court has recognized, an assertion that ICE is prepared to pursue removal to Mexico, without evidence of Mexico's authorization or other concrete progress toward removal, is insufficient to establish changed circumstances, much less a significant likelihood of removal in the reasonably foreseeable future.[3] *See Garcia-Rivera v. Noem*, No. 1:26-CV-229, 2026 WL 1244545, at *3 (E.D. Va. Mar.

---

[3] Respondents acknowledge in a footnote that this Court has rejected these arguments in prior cases, but that they nonetheless raise them again here "in order to preserve them for appeal, if authorized." ECF No. 8 at 13 n.6.

2, 2026) ("Now, Federal Respondents state that 'ICE has made progress in removing Petitioner to a third country [Mexico],' but the record before the Court indicates that this progress consists of only a deportation officer stating that 'ICE is ready to move forward with removal' and that it 'would send Petitioner to a staging facility to effectuate Petitioner's removal to Mexico.' There is nothing else, not even the suggestion that ICE has simply attempted to secure travel documents or Mexico's authorization for Petitioner's removal to Mexico." (citation omitted)).

Beyond Respondents not carrying their burden of establishing changed circumstances under § 241.13(i)(2), § 241.13(i)(3) separately requires DHS to provide Petitioner with notice of "the reasons for revocation" and to conduct "an initial informal interview promptly after [his] return to [DHS] custody[.]" *See* 8 C.F.R. § 241.13(i)(3). Here, although the Notice of Revocation of Release identified ICE's effort to obtain a travel document for removal to Cuba as the reason for revocation, it does not identify circumstances explaining why removal to Cuba had become more likely at that time, particularly given Petitioner's prior failed removal attempts to Cuba. *See Hoac v. Becerra*, No. 2:25-CV-01740, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (". . . Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around."). Thus, there was inadequate notice given to Petitioner because the Notice of Revocation of Release failed to adequately explain what circumstances had changed such that Petitioner could respond accordingly.

Nor did Petitioner have a meaningful opportunity to gather evidence or respond to the asserted changed circumstances before his OSUP was revoked. Respondents conducted the informal interview on the same day that they served the Notice of Revocation of Release and re-detained Petitioner. ECF No. 8, attach. 2 at ¶ 18. Petitioner's response during that interview—

discussing his compliance with the terms of his OSUP for the past twenty years and his desire to remain on supervision—does not indicate that he understood or was given an opportunity to meaningfully address whether his removal to Cuba had become significantly likely in the reasonably foreseeable future:

> I think I have been straight and working hard driving trucks. I have not made any mistakes since 2006. I need a second chance for supervision. I have not missed any check-ins, I've been fine. I'm trying to marry my girl-friend. My mom in Cuba is Blind. I send money to Cuba to help her. There's no life in Cuba. I will not have any violations here.

*See* ECF No. 8, attach. 9 at 1.

Moreover, Respondents cannot cure this deficiency by relying on their subsequent identification of Mexico as a potential country of removal because the Notice of Revocation of Release did not identify Mexico as a basis for revocation and there is no indication that Petitioner was given an opportunity to respond to that possibility before his OSUP was revoked. *See Choy v. Woosley*, No. 4:25-CV-197, 2026 WL 324601, at *6 (W.D. Ky. Feb. 6, 2026) ("Respondents may not rationalize a re-detention after the fact; rather, the reason must be articulated to the detainee so that she has a meaningful opportunity to respond to the reasons and to submit evidence in opposition." (internal quotation omitted) (citation omitted)); *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 788 (D. Minn. 2025) (rejecting Respondents' "post-hoc explanation" that ICE had learned, several weeks after revocation, that Jamaica was cooperating with ICE to issue travel documents, because those events "could not have constituted the supposedly changed circumstances underlying the Notice [of Revocation of Release]" and were "too little, and too late").

Accordingly, even apart from Respondents' failure to establish changed circumstances, the record does not indicate that Respondents provided Petitioner with either adequate notice or a meaningful opportunity to respond. Respondents' revocation of Petitioner's OSUP therefore

violated the procedures required by 8 C.F.R. § 241.13 and, under *Accardi*, violated Petitioner's right to due process.[4] *See Nguyen v. Hyde*, 788 F. Supp. 3d 144 (D. Mass. 2025) ("Taken together, ICE's individualized determination to re-detain [the petitioner] is not in compliance with 8 C.F.R. § 241.13(f), (i)(2). And ICE, like any agency, has the duty to follow its own federal regulations. . . . As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and [ICE] fails to adhere to it, the challenged [action] is invalid." (citation omitted) (internal quotation omitted)).[5]

---

[4] Petitioner also challenges the revocation of his supervision under the APA. *See* ECF No. 1 at 6–8; ECF No. 10 at 10. But this Court has previously declined to recognize an APA challenge in the context of a petition for habeas relief. *See, e.g.*, *Chavez v. Crawford*, No. 2:26CV57, ECF No. 29 at 11, *report and recommendation adopted*, *Chavez v. Crawford*, No. 2:26CV57, 2026 WL 2884421 (E.D. Va. Sept. 25, 2026). Judicial review of agency action under the APA is available only where "there is no other adequate remedy in a court." *Bacardi & Co. v. United States PTO*, 104 F.4th 527, 534 (4th Cir. 2024) (quoting 5 U.S.C. § 704). Courts have held that an individual challenging the legality of their immigration detention may not obtain relief under the APA given the availability of an "adequate remedy" under 28 U.S.C. § 2241. *See, e.g.*, *Quispe v. Blanche*, No. CV 26-817, 2026 WL 2253663, at *3 (D. Md. Aug. 5, 2026) (concluding that a petition for a writ of habeas corpus is an adequate remedy precluding relief under the APA) (citing cases). Here, Petitioner's adequate remedy is a writ of habeas corpus under 28 U.S.C. § 2241, which can provide the release from custody Petitioner seeks and which falls "within the historic core of habeas[.]" *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 123 (2020).

[5] In their Opposition, Respondents assert that, to the extent Petitioner challenges Respondents' authority to execute his third-country removal to Mexico, that challenge fails because DHS's March 2025 Guidance satisfies any due process requirements. *See* ECF No. 8 at 14–18. Although Petitioner references his entitlement to a credible-fear screening and Immigration Judge review of the screening determination in a footnote, he does not appear to challenge the third-country removal process itself or request such process before his removal. *See* ECF No. 10 at 7 n.2. Although this Court and others have previously found that DHS's March 2025 Guidance is unconstitutional, this Court need not address whether Petitioner is entitled to such process here. *See, e.g.*, *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 26-1212, 2026 WL 2797801, at *17 (1st Cir. Sept. 18, 2026) (". . . [T]he [March] Guidance conflicts with the statutory and regulatory provisions governing fear-of-torture claims insofar as it authorizes third-country removals without effective notice and a meaningful opportunity to assert such claims in connection with such removals. The [March] Guidance is therefore unlawful under the APA."); *Faragalla v. Crawford*, No. 3:26-CV-63, 2026 WL 541132, at *7 (E.D. Va. Feb. 26, 2026) ("Respondent argues that all the process [petitioner] would be owed in such a circumstance is set out in the March Guidance and summarized in the eight-step process discussed *supra*. . . . But district courts within the United States Court of Appeals for the Fourth Circuit and across the country have found that the process in the March Guidance is unlawful." (citation omitted)); *Escobar v. Chestnut*, No. 1:25-cv-01801, 2025 WL 3687639, at *4 (E.D. Cal. Dec. 19, 2025) ("Courts across this circuit have found that ICE's policy, as described in the March and July Memoranda, is likely unconstitutional." (citing cases)).

### C. Petitioner's Motions to Appoint Counsel and for the Issuance of a No-Transfer Order Are Moot.

In addition to habeas relief, Petitioner seeks the appointment of counsel as well as the issuance of an order barring his transfer from his current place of detention during the pendency of this action. *See* ECF Nos. 2–3. Since filing these motions, however, Petitioner has secured counsel to represent him in these proceedings, and the Court has entered an order barring Petitioner's removal or transfer from this District without this Court's permission during the pendency of this action. *See* ECF Nos. 5, 9. Because the relief requested has been granted, the undersigned **RECOMMENDS** that Petitioner's Motions, ECF Nos. 2–3, be **DISMISSED AS MOOT**.

## III. RECOMMENDATIONS

For the reasons explained above, the undersigned **RECOMMENDS** that the Petition, ECF No. 1, be **GRANTED**. The undersigned further **RECOMMENDS** that the Motions to Appoint Counsel and for the issuance of a No-Transfer Order, ECF Nos. 2–3, be **DISMISSED AS MOOT**. The undersigned further **RECOMMENDS** that:

- Petitioner be **RELEASED** from custody immediately;
- Petitioner's Order of Supervision be **RESTORED** immediately, not to be revoked unless done so in compliance with the requirements of 8 C.F.R. § 241.13;
- Respondents be **ENJOINED** from re-detaining Petitioner except upon a showing of sufficient changed circumstances with respect to the prospects for removal to a qualifying consenting country; and
- Respondents file a status report with the Court within **THREE DAYS** of Petitioner's release to confirm that he has been released from custody.

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party. *See* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1954).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner at his address on record.

/s/
Lawrence R. Leonard
~~United States Magistrate Judge~~
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
September 29, 2026